**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Brandon Marsh (SBN 268316)
bmarsh@saxenawhite.com
12750 High Bluff Drive
Suite 475
San Diego, CA 92130
Telephone:     (858) 997-0860
Facsimile:     (858) 369-0096

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GUIDEWIRE SOFTWARE INC., MARCUS S. RYU, MICHAEL G. ROSENBAUM, and CURTIS H. SMITH,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Sheet Metal Workers Local 19 Pension Fund ("Plaintiff") alleges the following based upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: (a) review and analysis of public filings made by Guidewire Software, Inc. ("Guidewire" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference calls and postings on Guidewire's website concerning the Company's public statements; and (d) review of other publicly available information concerning Guidewire and the Individual Defendants (as defined below).

## NATURE OF THE ACTION

1.      This is a federal securities class action against Guidewire and certain of its current and/or former officers and directors (collectively, "Defendants") for violations of the federal securities laws.  Plaintiff brings this action on behalf of all persons or entities that purchased or otherwise acquired Guidewire common stock from March 6, 2019 through March 4, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  The action alleges that Defendants engaged in a fraudulent scheme to artificially inflate the Company's stock price in violation of Sections 10(b) and 20(a) of the Exchange Act.

2.      Guidewire provides enterprise-level software systems for the property and casualty ("P&C") insurance industry.  During the Class Period, Defendants represented to investors that Guidewire was well-positioned to capitalize on a shift in the P&C insurance industry away from on-premise software systems to software systems provided over the cloud.  Defendants touted the "robust" demand that existed for Guidewire's cloud-based products and assured investors

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
1

that customer demand was "enduring and broad-based across most or all segments of the market." Defendants emphasized that the Company had "demonstrated particular success with our cloud and digital initiatives," and that "100% of Guidewire customers will make the decision to move to the Guidewire Cloud."

3.    Defendants further touted the demand for Guidewire's cloud offering by reporting, at the end of each quarter, that cloud sales represented a substantial and growing percentage of the Company's overall sales.  At the start of the Class Period, Guidewire told investors that cloud sales represented between 55% to 75% of the Company's total sales; by the end of the Class Period, Guidewire had increased the range to 70% to 80%.  The Company also issued highly favorable revenue and Annual Recurring Revenue ("ARR") guidance, a financial metric Guidewire created "to provide more insight to [the Company's] business dynamic through this cloud transition" that was held out by Defendants to be "the best indicator of the overall health of [the Company's] business."

4.    In addition to touting strong demand for Guidewire's cloud offerings, Defendants assured investors that customer demand remained strong across the Company's entire product offering – i.e., including its legacy on-premise business – underscoring that "there still is considerable interest in our self-managed platform."

5.    These statements were materially false and misleading. As Defendants knew but concealed from investors, the demand for Guidewire's cloud products was weak and the Company's transition to the cloud was not going well because Guidewire's cloud-based products needed to be significantly improved to meet customer needs and catch-up with rival systems. Further, Guidewire's failed transition to the cloud was damaging the Company's traditional on-premise business, as customers delayed purchasing decisions or declined to renew existing

licenses.  As a result, Guidewire's revenue guidance, including guidance modeled on strong and increasing demand for Guidewire's cloud-based systems, was baseless and unattainable.

6.       On March 4, 2020, investors began to learn the truth when Guidewire announced its financial results for the second quarter of fiscal 2020 and slashed its full year revenue guidance by $57 million, from a range of $759 million to $771 million to only $702 million to $714 million. In addition, Guidewire cut its ARR guidance from a range of 14% to 16%, down to 11% to 12% for the third quarter of 2020. During the accompanying earnings conference call, Defendants indicated that Guidewire's cloud products needed to be improved in order to meet customer needs and successfully compete against rival systems.  Defendants also revealed that a large swath of Guidewire customers no longer wanted the Company's traditional on-premise products and had not adopted the Company's cloud products.  On this news, Guidewire's share price plummeted 17% in one day, wiping out over $1.5 billion in market capitalization.

7.       As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant damages.

## JURISDICTION AND VENUE

8.       The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 27 of the Exchange Act (15 U.S.C. §78aa).

10.       Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b), Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts

charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District, as Guidewire is headquartered in this District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## CLASS ACTION ALLEGATIONS

12.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Guidewire common stock between March 6, 2019 and March 4, 2020, inclusive, and who were damaged thereby (the "Class").   Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

13.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Guidewire's common shares actively traded on the New York Stock Exchange ("NYSE").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of shares of Guidewire common stock were traded publicly during the Class Period on the New York Stock Exchange ("NYSE").   Record owners and other members of the Class may be identified from records maintained by Guidewire or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

14.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

15.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

16.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      a)      whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

      b)      whether Defendants participated in and pursued the common course of conduct complained of herein;

      c)      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, and prospects of Guidewire;

      d)      whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance, and prospects of Guidewire;

      e)      whether the market price of Guidewire common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

      f)      the extent to which the members of the Class have sustained damages and the proper measure of damages.

17.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually

---

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## PARTIES

18.    Plaintiff Sheet Metal Workers Local 19 Pension Fund, as set forth in the accompanying certification, incorporated by reference herein, purchased Guidewire common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19.    Defendant Guidewire is incorporated under the laws of Delaware with its principal executive offices located in San Mateo, California. Guidewire's common stock trades on the NYSE exchange under the symbol "GWRE."

20.    Defendant Marcus S. Ryu ("Ryu") was the Chief Executive Officer ("CEO") of the Company from December 2010 to August 2019 and is the current Chairman of the Company since August 2019.

21.    Defendant Michael G. Rosenbaum ("Rosenbaum") is the current CEO of the Company since August 2019.

22.    Defendant Curtis H. Smith ("Smith") was the Chief Financial Officer ("CFO") of the Company from March 2018 to March 2020.

23.    Defendants Ryu, Rosenbaum, and Smith, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their

positions and access to material non-public information available to them, the Individual

Defendants knew that the adverse facts specified herein had not been disclosed to, and were

being concealed from, the public, and that the positive representations which were being made

were then materially false and/or misleading.  The Individual Defendants are liable for the false

statements pleaded herein.

24.    The Company and the Individual Defendants are collectively referred to as the

"Defendants."

### SUBSTANTIVE ALLEGATIONS
### Background

25.    Guidewire provides enterprise-level software products and services for the global

P&C insurance market.  The Company's software systems are designed to help insurance carriers

improve their operational efficiency, speed to market, and customer experience by providing a

central source for all customer, transactional, and financial data.   The Company offers two

operational platforms to P&C insurers.  The first platform, InsuranceSuite, is a configurable and

scalable system primarily comprised of three applications – PolicyCenter, BillingCenter, and

ClaimCenter – that can be licensed separately or together.  These applications can be deployed

by customers on-premise (*i.e.*, at their facilities) or via the cloud (*i.e.*, over the internet via a

global network of remote servers).  The second platform, InsuranceNow, offers policy, billing,

and claims management functionality for insurers that prefer an all-in-one solution. It is offered

only over the cloud.

26.    In the years leading up to the Class Period, P&C insurers increasingly moved away

from on-premise deployments in favor of cloud-based solutions in order to improve application

delivery and resiliency while lowering overall costs.  Several of Guidewire's competitors were

quick to identify the industrywide transition to the cloud and roll-out advanced cloud-based

solutions.  As a result, analysts and investors were concerned about Guidewire's ability to successfully handle the transition to the cloud and successfully compete against rival P&C software providers with more advanced cloud offerings.  For example, on March 3, 2019, just three days before the start of the Class Period, Piper Jaffray issued a report titled "No Cloud in Sight" which noted that "[o]ur checks suggest that Guidewire continues to struggle to sell InsuranceSuite Cloud deals and that the pace of activity is below internal expectations."

27.    During the Class Period, Guidewire assured investors regarding the "robust" and "broad-based" customer demand for the Company's cloud-based products, as well as the continued growth in its legacy on-premise business, and dispelled any concerns about the Company's ability to successfully manage the industrywide transition to the cloud.

**Materially False and Misleading**
**Statements Issued During the Class Period**

28.    The Class Period begins on March 6, 2019, when Guidewire announced its financial results for the second quarter of fiscal 2019. The Company reported revenue and profitability that exceeded its guidance and attributed the successful quarter to its cloud initiatives.  In the Company's press release, Defendant Ryu stated that "we extended our overall market momentum and demonstrated particular success with our cloud and digital initiatives . . . we continue to invest in Guidewire Insurance Platform to service the growing demand we see for cloud-based core systems."  During the accompanying second quarter earnings conference call, Ryu stated that the demand for the cloud products were "enduring and broad-based across most or all segments of the market."

29.    On June 4, 2019, Guidewire announced its financial results for the third quarter of 2019.  In the Company's press release, Defendant Ryu continued to tout the success of its cloud platform, stating that "[d]uring the quarter we added two additional InsuranceSuite Cloud customers amidst robust demand for Guidewire Cloud overall, as new and existing customers

increasingly seek Guidewire as a trusted partner to shoulder a broader role in their digital transformations."

30.    Two days later, at the William Blair Growth Stock Conference, Defendant Ryu declared that the cloud transition is a "really pure opportunity for Guidewire."  Ryu quieted any notion that customers were slow in adopting the Company's cloud products, stating that "[w]hile in the past, some insurers were pushing off the idea of whether to shift to the cloud," now the "demand curve kind of shifts only in one direction."  Ryu specified that the demand for cloud came from Guidewire's "new and existing customers," including "large carriers, some of the largest ones in the industry and among our customer base as well as the small ones." Ryu underscored that the demand was "geographically dispersed" across "different lines of business, both personal lines, commercial lines."

31.    On September 5, 2019, the Company announced its financial results for the fourth quarter of 2019 and full fiscal year.  In the press release, Defendant Ryu, who had transitioned from the Company's CEO to the Chairman of its Board of Directors, continued to tout the performance of the Company's cloud business, stating that "[o]ur fourth quarter performance reflects growing P&C industry demand for core system modernization and an increasing preference for cloud-based deployments" and that "[i]t's exciting to see the increasing demand and momentum for Guidewire Cloud offerings."  During the accompanying earnings conference call, Ryu described how a number of new cloud deals signed during the fourth quarter enabled the Company to achieve total fiscal 2019 revenue of $719.5 million—nearly exactly the $719 million it had previously projected.  Defendant Rosenbaum similarly emphasized the purportedly strong demand that continued to exist for the Company's cloud offering, stating that he was "thrilled with the demand we see in the market, both new and existing customers."

32.     As for fiscal 2020, Defendant Ryu assured investors that Guidewire had a "really updated sense of the shape of the demand that's coming to us now," and although the cloud transition was "still in the early innings," "there's substantially more clarity and, I think, an improvement in our ability to guess what form the demand will come, as opposed to guessing at it."  In particular, Ryu highlighted Guidewire's ability to accurately forecast cloud demand due to the Company's "great deal of market learning in the latter half [of fiscal 2019] that's now been internalized and is reflected in our outlook."

33.     During the September 5, 2019 investor conference call, Defendant Smith noted that Guidewire was slightly decreasing guidance on its subscription and license revenue for fiscal 2020, but reassured investors that the decrease was simply a one-time impact of new revenue recognition policies that required revenue streams from cloud subscriptions to be recognized ratably over the life of the contract, whereas all revenue from term licenses were required to be recognized upfront.   Thus, Defendants claimed, the slightly lower overall subscription and license revenue guidance for fiscal 2020 was actually a *positive* because it reflected a mix in revenues that increasingly favored long-term revenue streams from cloud business, and, according to Guidewire's executives, portended a bright future for the Company.  As a result of the accounting changes, the Company now expected total revenue for fiscal 2020 to be in the range of $759 million to $771 million, an increase of 5% to 7% from fiscal 2019, and license and subscription revenue to be in the range of $443 million to $455 million, an increase of 15% to 18% from fiscal 2019, but slightly lower than the 20% guidance previously provided.  Smith specifically attributed lowered guidance for license and subscription revenue to the high percentage of new cloud deals as compared to total new deals and underscored that it "reflect[ed] the increasing demand for our cloud-based services."

34.   In reaction to these September 5, 2019 disclosures, the Company's stock price soared by 15%, from $95.41 per share on September 5, 2019, to $109.41 per share on September 6, 2019.

35.   On September 26, 2019, Guidewire hosted an Analyst Day conference during which Rosenbaum continued to emphasize the purportedly strong demand that existed for Guidewire's cloud products.   Indeed, Rosenbaum told investors that, in due course, "I think 100% of Guidewire customers will make the decision to move to the Guidewire Cloud" because Guidewire had "built enough trust with [its] customer base that [Guidewire] can reliably run and securely run these core systems as a cloud-based service."  Guidewire's Vice President of Cloud Customer Experience, Christina Colby, further assured investors that in addition to strong cloud demand, "there still is considerable interest in our [on-premise] platform."

36.   Finally, on December 5, 2019, the Company announced its financial results for the first quarter of fiscal 2020.   During the accompanying conference call, Smith reaffirmed the Company's prior guidance that projected an 18% increase in license and subscription revenue for fiscal 2020.  Smith explained that Guidewire continued "to anticipate that between 55% and 75% of new sales for the year [would] be subscriptions" for cloud products, as Guidewire "continu[ed] to see cloud demand out there" and customers increasingly "focused on our cloud offerings versus our self-managed offerings."   Smith added that, going forward, the Company would not "change [its] outlook for the year, [its] confidence in the projections that [it] made for the year, the demand for cloud and [its] ability to validate the guidance that [it] already provided." Smith also reaffirmed the Company's ARR guidance of "14% to 16% year-over-year growth."

37.   The above statements identified in ¶¶28-36 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that the Company's

transition to the cloud was not going well; (2) that Guidewire's cloud-based products needed to be improved to meet customer needs and catch-up with rival systems; (3) that the Company's failed transition to the cloud was also hurting Guidewire's traditional on-premise business; and (4) as a result, Guidewire's revenue guidance, including guidance principally based on significantly increasing demand for the Company's cloud-based products, was baseless and unattainable.

### The Truth Is Revealed

38.    On March 4, 2020, only three months after reiterating its strong revenue guidance for fiscal 2020, the truth about Guidewire's failed cloud transition emerged.  In announcing its financial results for the second quarter of 2020, the Company was forced to slash its revenue guidance for fiscal year 2020 by $57 million, from a range of $759 million to $771 million down to $702 million to $714 million. Rather than forecasting a year-over-year revenue increase of up to 7% for fiscal 2020, the Company was now forecasting a substantial revenue decline of approximately 7.5%. The Company similarly lowered its critical ARR guidance to be between 11% and 12% in fiscal 2020, compared to its previous range of 14% to 16%.

39.    In reaction to the news, Guidewire's stock price plummeted by 17% in a single day, falling from $112.48 on March 3, 2020 to $93.56 on March 4, 2020, a decline of $18.92 per share that wiped out more than $1.5 billion in market capitalization.

### UNDISCLOSED ADVERSE FACTS

40.    The market for Guidewire's common stock was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Guidewire's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired

Guidewire's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Guidewire and have been damaged thereby.

41.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Guidewire's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Guidewire's business, operations, and prospects as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Guidewire's financial well-being and prospects.

43.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements made during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**LOSS CAUSATION**

44.     During the Class Period, as detailed herein, the Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Guidewire

common stock and operated as a fraud or deceit on Class Period purchasers of Guidewire common stock.  Defendants failed to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.  When the Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Guidewire common stock fell precipitously as the prior inflation came out of the Company's stock price.  As a result of their purchases of Guidewire common stock during the Class Period, Plaintiff and the other Class members suffered economic loss.

45.     By failing to disclose the true state of the Company's business operations and financial performance, investors were not aware of the true state of the Company's business operations and financial status.  Instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants concealed the truth from investors and presented a misleading picture of Guidewire's business operations and financial prospects.

46.     Defendants' false and misleading statements had the intended effect and caused Guidewire's common stock to trade at artificially inflated levels throughout the Class Period. The stock price drop discussed herein caused real economic loss to investors who purchased the Company's common stock during the Class Period.

47.     The decline in the price of Guidewire's common stock after the truth came to light was a direct result of the nature and extent of the Defendants' fraud being revealed to investors and the market.  The timing and magnitude of Guidewire's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.  The economic loss suffered by Plaintiff and the other Class members was a direct result of the Defendants' fraudulent scheme to artificially inflate the prices of Guidewire's common stock and the subsequent decline in the value of

Guidewire's common stock when the Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**SCIENTER ALLEGATIONS**

48.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

49.    As alleged herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Guidewire, their control over, and/or receipt and/or modification of Guidewire's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Guidewire, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**FRAUD-ON-THE-MARKET DOCTRINE**

50.    At all relevant times, the market for Guidewire's common stock was an efficient market for the following reasons, among others:

        a.    Guidewire shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

        b.    As a regulated issuer, Guidewire filed periodic public reports with the SEC and/or the NYSE;

        c.    Guidewire regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire

services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

    d.    Guidewire was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

51.    As a result of the foregoing, the market for Guidewire's common stock promptly digested current information regarding Guidewire from all publicly available sources and reflected such information in Guidewire's share price.  Under these circumstances, all purchasers of Guidewire's common stock during the Class Period suffered similar injury through their purchase of Guidewire's common stock at artificially inflated prices and a presumption of reliance applies.

52.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.

## **NO SAFE HARBOR**

53.    The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements"

when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

54. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Guidewire who knew that the statement was false when made.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. This claim is asserted against all Defendants.

56. During the Class Period, Guidewire and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Guidewire common stock; and (iii) cause Plaintiff and the other members of the Class to purchase Guidewire common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

57. These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Guidewire common stock in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  The Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.  The Individual Defendants are also sued herein as controlling persons of Guidewire, as alleged herein.

58.     Guidewire and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Guidewire as specified herein.  These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Guidewire's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts, and omitting to state material facts necessary in order to make the statements made about Guidewire and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Guidewire's common stock during the Class Period.

59.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and

reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other, and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

60.     These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly, and for the purpose and effect of concealing Guidewire's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Guidewire common stock was artificially inflated during the Class Period.  In ignorance of the fact that the market price of Guidewire shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the

securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Guidewire common stock during the Class Period at artificially inflated high prices and were damaged thereby.

62.    At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Guidewire, which were not disclosed by the Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired Guidewire common stock during the Class Period, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

63.    By virtue of the foregoing, Guidewire and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

65.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.    The Individual Defendants were and acted as controlling persons of Guidewire within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their

high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.    In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

68.    As set forth above, Guidewire and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

1

2    (b)    Awarding compensatory damages in favor of Plaintiff and the other Class

members against all Defendants, jointly and severally, for all damages sustained as a result of

3

4    Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

5    (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

6    this action, including counsel fees and expert fees; and

7    (d)    Such other and further relief as the Court may deem just and proper.

8                          **JURY TRIAL DEMANDED**

9    Plaintiff hereby demands a trial by jury.

10   Dated: July 24, 2020                              Respectfully Submitted,

11

12                                                    */s/ David R. Kaplan*
                                                      David R. Kaplan

13
                                                      **SAXENA WHITE P.A.**
14                                                    David R. Kaplan (SBN 230144)
                                                      Brandon Marsh (SBN 268316)
15                                                    12750 High Bluff Drive
                                                      Suite 475
16                                                    San Diego, CA 92130
                                                      Telephone: (858) 997-0860
17                                                    Facsimile: (858) 369-0096
                                                      dkaplan@saxenawhite.com
18                                                    bmarsh@saxenawhite.com

19
                                                      *Counsel for Plaintiff*
20

21

22

23

24

25

26

27

28

## CERTIFICATION AND AUTHORIZATION

I, Tom Klingenberg, on behalf of the Sheet Metal Workers Local 19 Pension Fund ("Local 19"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  I have reviewed a complaint in this matter and I am authorized in my capacity as Administrator of Local 19 to initiate litigation and to execute this Certification on behalf of Local 19.

2.  Local 19 did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any action arising under the federal securities laws.

3.  Local 19 is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  Local 19's transactions in Guidewire Software, Inc. common stock during the Class Period are set forth below.

| Date | Transaction | Shares | Price |
|---|---|---|---|
| 04/25/19 | Sell | 1,200 | $105.48 |
| 06/20/19 | Sell | 400 | $99.91 |
| 09/30/19 | Sell | 1,000 | $104.34 |
| 01/27/20 | Sell | 450 | $111.78 |
| 03/03/20 | Purchase | 1,000 | $106.45 |

5.  Local 19 has sought to serve and was appointed as lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification: *None*

6.  Local 19 has sought to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff, was not appointed lead plaintiff or the lead plaintiff decision is still pending:

    *In re Newell Brands, Inc. Sec. Litig.*, No. 2:18-cv-10878 (D.N.J.)

    *In re Merit Med. Sys., Inc. Sec. Litig.*, No. 8:19-cv-02326 (C.D. Cal.)

    *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation*, No. 2:20-cv-00856 (N.D. Ala.)

7.  Local 19 will not accept any payment for serving as a representative party on behalf of the Class beyond Local 19's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _20th_ day of July, 2020.

*Sheet Metal Workers Local 19 Pension Fund*

Tom Klingenberg, Administrator